UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

GREGORY E. RULEY                                                                    PLAINTIFF

v.                                                           CIVIL ACTION NO. 4:10-CV-P34-M

SOUTHERN HEALTH PARTNERS et al.                         DEFENDANTS

## MEMORANDUM OPINION and ORDER

Plaintiff, Gregory E. Ruley, filed a complaint against Southern Health Partners of Chattanooga, Tennessee (SHP) and Nurse Angela Pleasant alleging constitutional violations relating to his medical care while incarcerated at the Hopkins County Jail. Before the Court is Defendants' motion to dismiss or for summary judgment (DN 45). For the following reasons, the Court will grant Defendants' motion.

## I. FACTS

In the complaint,[1] Plaintiff alleged that his rights were violated in November 2009 through January 2010. He alleged that the medical staff would not address several different issues related to a "small heart attack" in November 2009 and from vomiting blood.

Plaintiff's supplemental complaint added Nurse Pleasant as a Defendant and added allegations relating to his back, which he said began to hurt severely in April 2010. He alleged that he suffered from cruel and unusual punishment because his back problems were not addressed and that Defendant Pleasant was in charge of all of the medical procedures that were denied.

Defendants have moved for summary judgment (DN 45). They argue that Plaintiff's

---

[1] The original complaint was filed by three Plaintiffs: Plaintiff Ruley, James A. Sallee, and Daniel L. Mullen. Sallee and Mullen have since been dismissed from this action.

claims against SHP cannot succeed based on *respondeat superior* or vicarious liability. They further argue that Plaintiff has not shown that Defendants were deliberately indifferent to his serious medical needs because the medical and detention records demonstrate that he received regular medical treatment, including being seen by a nurse and a physician, and that he regularly received his medications. They assert that Plaintiff also was given an extra bed mat for his back pain and that he was taken to Trover Health System for evaluation after he fell out of bed.

Defendants further argue that Plaintiff's claim that he was not treated for a heart attack in November 2009 is directly refuted by the medical record which shows that he received medical attention. They further point to medical records reflecting that Plaintiff exhibited behavior problems which hindered and caused detriment to his own care.

Plaintiff did not file a response to Defendants' motion for summary judgment. The Court issued an Order that Plaintiff had an additional 21 days to file his response or Defendants' motion would be considered without benefit of his response. Plaintiff has filed what he entitles "motion to file an objection to Defendants motion to dismiss or for summary judgment" (DN 53). He simply asks that his motion to object be granted and that his previous motion to set a trial date be granted. He asserts, "The Hopkins County c/o's to be called to Court is of vital need to correspond with statement of claims and can be proven to be facts of evidence against Defendants."

Plaintiff did not submit any documents or other evidence in support of his objection to Defendants' motion. The Court has considered documents submitted by Plaintiff in conjunction with his complaints, along with the documents submitted by Defendants, in determining the following facts.

*Facts relating to heart attack/vomiting blood in November through January 2010*

Plaintiff submitted a copy of a grievance dated November 22, 2009, concerning a nurse's refusal to see him after he complained of pressure and burning in his chest because, she said, Plaintiff refused to take his blood pressure medicine. Plaintiff stated in his grievance that he did not refuse to take his medicine but had only stated that the nurse should not order any more for him because he could get it cheaper through his doctor.

In another grievance dated a few days later, Plaintiff complained of being kept on medical watch for the past few days, which he found very stressful because it meant he could not call his eight-year old son, stating: "The nurses had authority to place me on medical watch but cannot get anyone to release me." The response by the hearing officer was that Plaintiff was placed on medical watch per the doctor until the doctor could review Plaintiff's recent EKG results and that due to Plaintiff's history and routine complaints of chest pain he required this monitoring. He also submitted a grievance form from a few weeks later in which he complains that he was not given any medication for his heartburn at night and was told to fill out a sick-call slip for the day shift. The response by the hearing officer was that around-the-clock medical care is provided for emergencies and that non-emergency care requires a sick call.

Medical records attached to Defendants' motion show that on November 22, 2009, at 7:40 p.m. Plaintiff was brought to "medical" complaining of chest pain, clutching his uniform, crying, and stating that he had a lot of pressure and pain radiating down his left arm. Plaintiff reported vomiting before coming to medical. Plaintiff was given "Nitro SL and aspirin 81 mg." At 7:45 p.m., the medical notes show that Plaintiff continued to complain of chest pain and coughed until a small amount of emesis was noted. Plaintiff's blood pressure was taken, he was

3

given nitro and continued to be monitored. At 7:50 p.m., his blood pressure was taken and he was placed in a cell for "med watch." The medical records reveal that an hour later Plaintiff was noted standing at the window but, when he realized he was being watched, began moaning and sat down.

In a sick call request form submitted by Plaintiff on January 6, 2010, Plaintiff stated that he had severe acid reflux and heartburn and that he had been coughing up and vomiting blood for three days. The SHP "Clinical Pathways" form for that sick call request shows that Plaintiff was given "MI-Acid 30cc, Robutussin." A "Refusal of Medical Treatment Form" shows that as of February 3, 2010, Plaintiff refused to take his medicines, stating that he had been flushing them for a month.

*Facts related to back pain in April 2011*

Plaintiff attached to his supplemental complaint a copy of a sick call request to SHP dated April 14, 2010, stating that his lower back was hurting to the point where he could hardly get out of bed. He stated that he has two herniated discs in his lower back and asked for something for the pain. A sick call request dated April 16, 2010, also stated that Plaintiff had two herniated discs and asked if he could get another mat to help him with the pain. The medical staff wrote on that sick call slip that the inmate had been instructed to write a requisition to "MTA" regarding his request for an extra mat. A "Hopkins County Jail Requisition Form" dated April 18, 2010, asked for an extra mat, and the response was "no." On April 20, 2010, a sick call request stated that Plaintiff had put in two requests asking for an extra mat. He also stated that he needed something for the pain because "IBs are not doing the trick." A sick call request dated April 27, 2010, stated in pertinent part:

4

> My lower back still is hurting with severe pain shooting down both legs, more on the right. My right foot is swollen very badly. I still haven't seen the jail doctor. Have not had no pain meds since the hospital on 4-23-10. Also still having a lot of pain and pressure in and on right side of my head. . . .This herniated disc is also causing my neck fusion to hurt. Need to see doctor!

The response was: "I/M Ruley you are on the MD list when he comes you will be seen also you have been receiving Ultram 50 mg BID on med pass for pain. You have been receiving the Ultram since 4-24-10."[2] Plaintiff also attached a discharge summary from the Trover Health System Emergency Department where he was seen on April 23, 2010 for "chronic back pain; lumbar herniated disk." Also attached was an "Inmate Priority Movement Form" for Plaintiff signed by Defendant Pleasant in which the reason that movement was requested was "Inmate defecating and urinating on himself and demanding medical clean him and put a diaper on him. Sent to ER 4/23/10. [No] returned orders. [no] orders therapy, only to f/u with jail [doctor for] herniated disk/ <u>behavior issues</u>." He also attached medical notes regarding medications given, including Ultram on April 24, 2010, and a SHP back pain/injury report indicating that he was seen on April 20, 2010 by LPN Blake for his back pain.

Records submitted by Defendants show that on April 24, 2010, Plaintiff was prescribed Ultram and that on April 27, 2010, the doctor ordered that Plaintiff be given an extra mat. A document from Trover Health System dated April 23, 2010, stated that he had been evaluated on that date for "Chronic back pain: lumbar herniated disk." He was to continue on his current medication and follow up with the doctor at the jail.

---

[2] Ultram is a medication used to help relieve moderate to moderately severe pain. *See* www.WebMD.com.

## II. ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### A. *Claim against SHP*

SHP "cannot be held vicariously liable for the actions of its agents . . . on a respondeat superior basis." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Establishing that a SHP employee deprived Plaintiff of a right secured by the Constitution is not enough for SHP to be liable under § 1983 for that deprivation. Rather, Plaintiff must also show that a SHP policy caused the deprivation of his Eighth Amendment rights. *Id.* That is, Plaintiff must "identify the policy, connect the policy to [SHP] and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (internal quotation marks and citation omitted).

Although the Court allowed the claim against SHP to go forward on initial review, here Plaintiff has offered no affidavit or other evidence showing that a genuine issue for trial exists as to the liability of SHP. Defendant SHP's motion for summary judgment will be granted on this basis. *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it").

### B. *Claim against Defendant Pleasant*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the

official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also White v. Napoleon*, 897 F.2d 103, 1010 (3d Cir. 1990); *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).

Here, Plaintiff undisputedly received medical treatment, including an EKG and medication, from Defendants for his chest pain. The records show that on November 22, 2009, he was brought to "medical" after complaining of chest pain where he was given nitro and aspirin and was monitored including having his blood pressure taken. The records also show that after he complained of severe acid reflux and heartburn and coughing up and vomiting blood in January 2010, he was given "MI-Acid 30cc" and Robutussin cough medicine. Documents submitted by Defendants demonstrate that in February 2010, Plaintiff refused to take his

8

medicines and in fact stated that he had been flushing them for the past month.

With regard to his complaints relating to his back pain for which he put in a sick call request on April 14, 2010, he saw a licensed practical nurse at the Jail for his back pain on April 20, 2010, and was taken to an outside emergency room on April 23, 2010, where he was seen for "chronic back pain; lumbar herniated disk." He began receiving Ultram for pain on April 24, 2010. The emergency room did not order Plaintiff to return or have therapy but rather just continue taking his medication and follow up with the Jail doctor. The Jail doctor ordered an extra mat for Plaintiff on April 27, 2010.

Thus, the record clearly indicates that Plaintiff's complaints of chest pain and vomiting blood and of back pain were treated by Defendants. Any disagreement that Plaintiff may have with the adequacy of such treatment does not rise to the level of a constitutional violation. *Westlake*, 537 F.2d at 860 n.5. The Court will grant summary judgment on this basis as well.

### III. CONCLUSION

The motion for summary judgment (DN 45) is **GRANTED**. Plaintiff's claims are **DISMISSED**.

Date:


cc:    Plaintiff, *pro se*
       Counsel of record
4414.009

9